## Coal and Iron Police.

*Police—Coal and iron police—Appointments—Removal—Power of Governor—Act of April 11, 1866.*

Under the Act of April 11, 1866, P. L. 99, relating to coal and iron police, the Governor may decline to make appointments to such police force, and he may also revoke commissions, and, when conditions in respect to the use of special police by any mining company demand it, he may decline to make any appointment whatever and revoke all commissions.

Department of Justice. Opinion to Hon. Gifford Pinchot, Governor.

WOODRUFF, Att'y-Gen., April 10, 1926.—I have your inquiry concerning the status of "Coal and Iron Police" as related to your power of appointment and removal, and also to the question of their powers and duties under the Act of April 11, 1866, P. L. 99.

In the Department of Justice opinion of Feb. 24, 1926, the statement is made that the provisions of the Act of Feb. 27, 1865, P. L. 225, creating "Railway Police," have been extended by later laws to other corporations than railroads. That opinion does not take up specifically the question of "Coal and Iron Police," concerning which you are now making inquiry, and I will confine myself to this latter class of special policemen. [7 D. & C. 596.]

"Coal and Iron Police" are clearly given, by the Act of 1866, the powers possessed by policemen of the City of Philadelphia, and are also allowed to exercise these powers "in the several counties in which they shall be so authorized to act as aforesaid." These powers they have had and have exercised for sixty years. The Department of Justice opinion of Feb. 24, 1926, necessarily recognized that fact, but neither it nor this opinion can in any wise increase or diminish the powers granted by law.

Before being able to exercise these powers in any county, however, they must have been appointed by the Governor; received a commission from him; taken the oath required from all public officers by article VII of the Constitution; and recorded said oath and also a certified copy of the commission in each and every county where the company for which they are acting as special policemen has mining property, and where it is desired that the special policemen shall exercise their powers.

If there is any failure to thus record the oath and commission in any county, the special policemen would be acting illegally there and be liable to prosecution for "false arrest."

So much for the similarity between "Railway Police" and "Coal and Iron Police." We note, however, a very different attitude of the legislature concerning the latter compared with the former by contrasting the Act of 1866 with that of 1865.

In the Act of 1865 there is not one word concerning the right of the Governor "to decline to make any such appointment" and his right "at any time to revoke the commission."

In the Act of 1866, however, after extending wholly the provisions of the Act of 1865 to the appointment and powers of "Coal and Iron Police," the legislature provided for a much greater control over "Coal and Iron Police." This is indicated by the following words added to section 1 of the Act of 1866: "And provided further, That the governor shall have power to decline to make any such appointment, sought to be made, under the provisions of this supplement whenever the circumstances of the case, in his opinion, do not require it, and at any time, to revoke the commission of any policeman appointed hereunder."

From time to time for the past sixty years there have been, and may continue to be, complaints that "Coal and Iron Police" are being used in a way to harass and oppress the striking miners of certain parts of the Commonwealth.

The legislature with wise foresight realized that special police, chosen and paid by large coal companies for their own private purposes, might become a force and power usable, even to the extent of grave oppression, against other interests opposed to the desires of the coal operators. To have means for control of this power the above quoted proviso was adopted.

Governors of the Commonwealth are bound by their oath of office and by specific other provision in the Constitution to "take care that the laws be faithfully executed," and, therefore, when asked to appoint, and after appointment of, "Coal and Iron Police," they should take care that the powers

Coal and Iron Police.

expressly given in the above quoted provision are used for the protection of the general people.

The clear intent of the legislature, as voiced in the above proviso, is that you, as Governor, have the power and duty to control, even to the extent of elimination, the question as to whether any one man or any number of men may hold commissions as "Coal and Iron Police" or continue to exercise the powers if granted to them.

It would be proper for you either to decline to appoint as a matter of precaution or to require assurances both as to the character of the persons proposed and as to the intent of the company proposing the persons for appointment.

The power and, if the public welfare requires it, the duty to decline to make appointments and to revoke commissions, extends not only to individual nominees and appointees, but, also, when conditions in respect to the use of special police by any company demand it, the power and duty is given to decline to make any appointment whatever and to revoke all commissions.

One particular abuse you should always stand ready to correct by means of your removal power is any attempt to use these special police to interfere with lawful action of members of the public.

The exercise of the power and duty imposed on you by the above quoted proviso is, in my opinion, entirely within the discretion of the Governor.

From C. P. Addams, Harrisburg, Pa.